# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:06CR382** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| **ARKETA WILLIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 48) issued by Magistrate Judge Thomas D. Thalken, recommending denial of the Motion to Suppress (Filing No. 22) filed by the Defendant Arketa Willis ("Willis"). Willis filed a Statement of Objection to Report and Recommendation Re: Motion to Suppress (Filing No. 51) and a supporting brief (Filing No. 52), as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

Willis is charged in Count I of the Superseding Indictment (Filing No. 27) with traveling in interstate commerce with the intent to distribute drug trafficking proceeds, and in Count III with a forfeiture of those proceeds, including but not limited to her interest in $100,950.00 in United States currency. In her Motion to Suppress, Willis seeks an order suppressing and excluding any and all evidence derived from the December 11, 2006, traffic stop, detention, and search.

Following an evidentiary hearing, Judge Thalken issued a Report and Recommendation in which he concluded that (1) Sergeant Edward Joseph Van Buren ("Sergeant Van Buren") had probable cause to search Willis's vehicle after his drug dog,

Rocky, "indicated"[1] to the presence of drugs in that vehicle; and (2) the search and seizure of the items in the vehicle was lawful. On the basis of these determinations, Judge Thalken recommended that Willis's motion be denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), a court shall make a de novo determination of those portions of the report, findings, and recommendations to which a defendant has objected. A court may accept, reject, or modify, in whole or in part, a magistrate judge's findings or recommendations. A court may also receive further evidence or remand the matter to the magistrate judge with instructions.

## STATEMENT OF FACTS

Judge Thalken provided a detailed account of the relevant events surrounding the traffic stop, the detention, and the search of the vehicle rented by Willis. The Court has considered the transcript of the hearing conducted by Judge Thalken (Filing No. 45) and the video of Willis's stop, detention, and search shown at that hearing. The Court has also carefully reviewed the briefs filed by the government and the Defendant concerning the Motion to Suppress (Filing Nos. 21, 26, 46), and the brief filed by the Defendant concerning the Defendant's objection to the Report and Recommendation (Filing No. 52). Based on

---

[1] Sergeant Van Buren testified that, in Nebraska State Patrol ("NSP") parlance, the words "alert" and "indicate" are terms of art that involve different kinds of behavior and signal different findings from a drug dog. An "alert" is "where you see the dog's behavior change. . . . All of the sudden, you see the dog stop, a head jerk, and it stops and starts working a particular area." (TR at 19). An "indication," on the other hand, is "when the dog goes into a final response and it's telling you, 'I smell the odor of drugs.'" (TR at 19).
Throughout this Memorandum and Order, I will use the NSP signal terms, except as where otherwise noted.

2

the Court's de novo review of the evidence and arguments, the Court adopts Judge Thalken's factual findings in their entirety.

**ANALYSIS**

Willis objects to Judge Thalken's conclusion that the dog, Rocky, indicated to the presence of drug odor, and asserts that Judge Thalken did not objectively review Rocky's behavior. Rather, Willis maintains that Judge Thalken relied solely on Sergeant Van Buren's subjective belief about Rocky's behavior to conclude that Rocky indicated to the presence of drug odor. Willis cites to two cases, *U.S. v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993), and *U.S. v. Heir*, 107 F. Supp. 2d 1088 (D. Neb. 2000), to support her position that an objective indication must exist in the evidence, and that Judge Thalken's reliance on the subjective interpretation by Sergeant Van Buren of Rocky's behavior contravenes Eighth Circuit precedent.

In *Jacobs*, the Eighth Circuit Court of Appeals was presented with the question of whether a drug dog's mere "interest" in, as opposed to an "alert"[2] to, a package constituted the probable cause needed to support the issuance of a search warrant. In that case, a drug dog showed an "interest" in a package that it was sniffing; however, the dog's handler could not confirm a positive "alert." The court held that any warrant application should have included the dog's failure to "alert," and that such an application "on its face, would not support probable cause." *Jacobs*, 986 F.2d at 1235. "Without an alert, the police clearly lacked the probable cause necessary to open the package." *Id.*

---

[2] I note that the court in *Jacobs* utilized the signal terms differently than the NSP—using "interest" as the NSP would use "alert" and using "alert" as the NSP would use "indicate"—and my discussion of *Jacobs* employs the meanings assigned by that court. *See also Heir*, 107 F. Supp. 2d at 1096 n.2.

*Heir* involved a dog sniff where the dog's handler testified that the dog "alerted"[3] to the presence of drugs, although the dog did not "indicate" to the presence of drugs as it had been trained to do. *Heir*, 107 F. Supp. 2d at 1091. The handler acknowledged that alert behavior was "subtle and might only be recognized by himself or another person who was familiar with [the dog's] tendencies," *id.*, but other expert witnesses testified that "they saw nothing on the videotape to indicate that [the dog] had detected the presence of drugs," *id.* The district court adopted the report and recommendation of the magistrate judge to grant the defendant's motion to suppress. Citing to *Jacobs*, the district court found that "there must be an objectively observable 'indication' by the dog of the presence of drugs. . . . Because it is undisputed that [the dog] did not positively 'indicate' the presence of drugs in the vehicle, as he was trained to do, there was no probable cause for the search." *Id.*

In this case, Sergeant Van Buren's unrefuted testimony is that Rocky is a well-trained drug dog, whose "performance has been very, very good" (TR at 56); that Rocky is a "fast dog," meaning "[h]e's not a real meticulous, slow-moving dog" (TR at 45); and that Rocky is a "passive"[4] indicator, meaning he "is trained to, when [he] detects the odors [he's] trained on, to sit, stand, or lay when [he] finds those odors" (TR 15). As opposed to both *Jacobs* and *Heir*, Sergeant Van Buren testified that Rocky *indicated* to the presence of drug odor,[5] and Judge Thalken credited Sergeant Van Buren's testimony in that regard.

---

[3]*Heir* involved the NSP, and therefore the court used the terms "alert" and "indicate" as Sergeant Van Buren would so use.

[4]Sergeant Van Buren testified that passive indicator dogs are trained "to sit in most situations, but there are occasions they will stand and stare or lay down and stare." (TR at 19).

[5]"[Rocky] got to the rear driver's side door seam and he stopped. And he jumped up, put his paws up by the upper part of the door, put his nose up to that seam and was a very nasal

4

That Rocky is a fast dog and a passive indicator, and that Sergeant Van Buren did not let Rocky go into a full sit,[6] does not render Rocky's behavior ambiguous. An officer who is familiar with a dog's tendencies can testify to the behaviors that dog would exhibit to indicate to the presence of drug odor. I have reviewed the tape and, crediting Sergeant Van Buren's testimony concerning Rocky's behavior, I find objectively observable evidence that Rocky indicated to the presence of drug odor. I concur with Judge Thalken's findings, and accordingly I will adopt the Report and Recommendation in its entirety.

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (Filing No. 48) is adopted in its entirety;

2. The Statement of Objection to Report and Recommendation Re: Motion to Suppress (Filing No. 51) is denied; and

3. The Defendant's Motion to Suppress (Filing No. 22) is denied.

DATED this 17th day of April, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

sniffing and then dropped down, stood, and stared. And I briefly gave him the opportunity to go into a sit also, although he was indicating the odor of drugs right there when he stopped, sniffed, and went into a stand and stare. He started to go into a sit and I pulled him away from the vehicle." (TR at 45).

[6] When Rocky indicated to the presence of drug odor, Sergeant Van Buren and Rocky were standing in the right-hand lane of I-80 at approximately 8:30 a.m. on Monday, December 11, 2006. (TR at 45–46). Sergeant Van Buren's desire to quickly end the dog sniff after he received a positive indication to the presence of drug odor is not only understandable, but advisable. Indeed, there is no reason a dog sniff needs to continue if the handler has observed a clear indication to the presence of drug odor.